### SHELLEY *v.* ST. CHARLES CO.[1]

*(Circuit Court, E. D. Missouri.* October 16, 1886.)

1. **TAXATION—SALE—PURCHASER.**
   An innocent third party, who purchases at a tax sale, takes free from taxes then due.
2. **SAME—PURCHASE BY OWNER.**
   Where an owner of property, knowing that taxes levied upon it are insufficient for the purpose of the levy, and less than required by law, allows it to be sold under a judgment for such taxes, and buys it in to escape paying what is justly due, another tax may be levied upon the land to make up his deficiency.

This is a proceeding by *mandamus* against the judges of the county court of St. Charles county to enforce the satisfaction of a judgment recovered in this court upon certain bonds and coupons issued by St. Charles county, under certain acts of 1869 and 1870, for the improvement by drainage of certain lands lying in said county known as the "Marias Temps Clair District," and to that end compel the levy of a sufficient tax to pay said judgment—less the amount of $1,687.50, already paid thereon—upon the lands designated in said district. The alternative writ recited the recovery of judgment; the acts under which the bonds and coupons in judgment merged were issued; the duty enjoined thereunder upon the county court to levy, upon the lands designated, taxes sufficient to pay said debt; the failure of said court, which it is alleged managed the financial affairs of said county, upon due demand made so to do; and commanded the

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

county court to levy the tax enjoined, and cause the same to be collected, or show cause.

The return, which is in the nature of a confession and avoidance, after reciting the acts referred to, alleges the execution thereunder by the county court of certain bonds with interest coupons attached, including relator's, giving numbers, date of issue, and maturity, of which bonds and coupons, as alleged, there matured, in 1872, $4,750; 1873, $5,500; 1874, $5,750; 1875, $5,500; 1876, $5,700; 1877, $5,350; 1878, $5,500; 1879, $6,100; 1880, $5,100; 1881, $1,650; that, to satisfy these, there were assessed against the Marias Temps Clair lands the following taxes, viz.: in 1871, $6,517.79; 1872, $6,195.09; 1873, $6,194.70; 1874, $5,391.88; 1875, $4,977.12; 1876, $4,963.32; 1877, $4,849.56; 1878, $4,849.08; 1879, $4,849.08; that "in the several years of the maturity of said bonds" the county paid, as its portion, the following sums, viz.: in 1872, $1,114.60; 1873, $943.33; 1874, $1,318.58; 1875, $496.86; 1876, $108.48; 1880, $778.60,—aggregating $4,760.45; that the bonds maturing during the various years, up to and including 1874, with the coupons, had been paid and canceled; that all of the interest coupons due in the various years up to and including 1874, most, if not all, of those maturing up to and including 1875, and some maturing in 1876, had been paid; that, of the taxes so assessed, there were delinquent of the taxes assessed in 1873, $4,540.86; 1874, $3,942.71; 1875, $3,762.22; 1876, $4,259.44; 1877, $4,226.38; 1878, $4,057.32; 1879, $4,057.32; that, to recover "all of said taxes for the several years for which the same had become delinquent," suits had been instituted subsequent to the year 1880, in the circuit court, by the county collector, against each of the several tracts of said Marias Temps Clair lands, judgments recovered, executions issued, and sales of said land made, from which $3,983.82 was realized. The return further denied the contract and authority of the county court over the assessment and collection of said taxes. The reply denied the allegations of the return.

The act of 1869, above referred to, contains, among others, the following provisions, viz.:

"Sec. 5. It shall be the duty of said commissioner, as soon as practicable after contracting for the proposed work, to make descriptive lists, by sections, township, and range, or other legal subdivision, of all lands that will wholly or in part be reclaimed or benefited by the proposed work; stating, as accurately as possible, the number of acres in each subdivision so reclaimed or benefited, the owners thereof, and the prospective value of the same after the completion of the work, and to estimate the benefit which they believe will accrue to the county at large by reason of such improvements;  *  *  * and a statement of the entire costs of the works and improvements proposed, to be completed within one year from the time of their appointment, including cost of preliminary surveys," etc.

"Sec. 7. The report of the commissioner, when confirmed or amended by said judges, shall be passed to the county assessor, who, at the annual assessment of taxes next thereafter made, shall assess to the county at large the esti-

mated benefits accruing to the same, and the residue of the entire cost of the improvements against the individuals benefited thereby, in proportion to the number of acres improved or reclaimed for them respectively, and the taxes so assessed are to be collected, and their collection enforced, in the same manner as other taxes for general purposes, and shall be equally *a lien on the lands assessed until paid.*"

The amendatory act of 1870, which authorized the issue of bonds in payment of such improvement, provides, by section 3 thereof, that—

"The payment of the principal and interest of all such bonds shall be provided for before maturity, by taxes assessed exclusively on the lands improved, benefited, or protected by such improvements, except such portion as may be deemed by the commissioners to be justly chargeable to the county at large, according to the provisions of said act of March 3, 1869, which portion the county shall pay out of money collected for general purposes; and the basis of taxation shall be the estimated increase in value caused by said improvement of the lands included in the descriptive lists required by section 5 of said act to be made by the commissioners; but, instead of the entire cost of said improvements being *assessed* in one year, only such amounts shall be *assessed* in any one year as will be sufficient to pay the annual interest on all such outstanding bonds, and the principal of all such bonds maturing the following year, allowing, however, *at least* twenty-five per cent. for delinquent taxes; and the assessors and collectors of the several counties are hereby charged with assessing and collecting such taxes in the same manner, and on the same terms, as they are required to assess and collect taxes for general purposes."

*E. B. Sherzer,* for relator.

*Dyer, Lee & Ellis* and *Castleman, Hough & Denison,* for respondent.

TREAT, J., (*orally.*) In this case we encounter special difficulties. Here were tax sales supposed to cover taxes for the years prior to those respective sales. It appears from the averments of the relator that the owners of the property, knowing that the taxes levied were not sufficient under the terms of the statute to give this bondholder and others what they were justly entitled to, bought in their own property under the tax titles to escape the necessity of paying the full amount due. It is not disclosed to the court adequately in these papers, even if it be true that the owners of the property did buy in their own property under a tax sale, whether the taxes theretofore levied were not adequate for that purpose.

As to the *mandamus* applied for with respect to the taxes not levied on bonds falling due after the prior tax sales, there is no dispute. Of course, the party is entitled to *mandamus* therefor, but Mr. Sherzer contended on behalf of his client that the purchasers under that tax sale are not to be relieved from the deficiency in the assessments and levies theretofore made. If a purchaser at a tax sale purchases as an innocent third party, he should take free from the taxes theretofore falling due, the sale being for all taxes theretofore due; but if the man owning the property does not pay his taxes, and is aware that the levy is less than what ought to have been lev-

ied, and buys in his own property in order to escape paying what was justly due, the court wishes to know that fact.   First, then, was the levy sufficient, and, if these parties are not innocent third parties, their property is still subject to their deficiency, and that is a matter of inquiry.   This will be referred to Judge KRUM, to report— *First*, to what extent the assessments and levies as to these taxes were insufficient; *second*, whether the parties buying in this property were original parties, or innocent third parties; *thirdly*, what is the amount for which *mandamus* should go of taxes in dispute subsequent to these taxes.